UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN J. OLIVER and ERIC ROBERT TIPPETTS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>DIRECTV, LLC,<br><br>    Defendant. | No. 14-cv-7794<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

Kevin J. Oliver and Eric Robert Tippetts ("Plaintiffs") filed this complaint against DirecTV, LLC ("Defendant") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. Defendant now moves to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(6) and, alternatively, to strike paragraphs 70-72 pursuant to Fed. R. Civ. P. 12(f). For the following reasons, Defendant's motion to dismiss is denied in part and granted in part. Defendant's motion to strike is denied.

**I. Factual Background**

On August 2, August 28, September 4, and September 11, 2014, Oliver received a call from a number assigned to Defendant, "877-389-6582," on his cellular telephone number, ending in "0434." On each of these occasions, Defendant contacted Plaintiff Oliver without first obtaining Oliver's prior express written consent. Oliver was not able to answer these calls, and Defendant did not leave a message. Defendant called Plaintiff on August 2 at 4:58 p.m., August 28 at 1:47 p.m., and September 4 at 12:00 p.m. After the September 4, 2014 call, Oliver called the number back with the intention of asking Defendant to stop calling, but was greeted by a pre-

recorded automated voice identifying the answering party as DirecTV and inviting Oliver to leave a voicemail. Defendant once again called Plaintiff again on September 11, 2014 at 5:08 p.m. Again, Plaintiff was unable to answer the call, and Defendant did not leave a message. Based on the circumstances of these calls, Plaintiff alleged, on information and belief, that Defendant called Oliver from its pre-recorded automatic telephone dialing system ("ATDS"). Oliver had previously had a contract with DirecTV, but canceled his service in March 2014. At the time of the calls, Oliver did not have a business relationship with DirecTV or owe a balance to DirecTV. Oliver alleged, based on his research and understanding, that the purpose of Defendant's calls were to solicit business from Oliver, and that Defendant maintained a list of former customers that it periodically contacted to promote special rates for re-enrolling in one of Defendant's satellite television packages.

Between April 2013 and September 2014, Defendant contacted Tippetts on his cellular telephone number, ending in "5640," approximately 25 times without first obtaining Tippetts' written consent. Tippetts did not consent to receiving calls on his cellular telephone from Defendant through an ATDS. On at least three occasions, Tippetts answered Defendant's call and heard a momentary pause before a live representative of Defendant would begin speaking. Tippetts was always routed to a different account manager who asked a series of questions related to Tippetts' prior cancellation of DirecTV service in April 2013 and tried to recruit Tippetts' back to DirecTV as a customer. Tippetts told Defendant's representative on each call that he was not interested in returning as a customer and that he did not want to receive any more calls from Defendant. At the time of the calls, Tippetts did not owe a balance or have a business relationship with Defendant, but Tippetts kept receiving calls from Defendant, each with an aggressive sales pitch. During Tippetts' last conversation with Defendant, Tippetts again told the

2

representative that he did not want to be called again and asked the representative if the company kept notes of the previous calls to Tippetts. Defendant's representative admitted that its staff kept notes of previous calls and hung up on Tippetts. Based on the circumstances, Tippetts believed Defendant's call center was autodialing former customers' numbers at random, and that Defendant's ATDS called Tippetts on every occasion with the purpose of soliciting business from Tippetts. Tippetts, seeking a way to stop Defendant from calling, performed internet research and learned that many people had negative experiences with Defendant's telemarketing campaign.

## II.     LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not test the merits of a claim; rather it tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a § 12(b)(6) motion, the court accepts all well-pleaded facts as true, and draws all reasonable inferences in favor of the plaintiff. *Id.* at 1521. Fed. R. Civ. P. 8(a)(2) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief, "such that the defendant is given "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Notice pleading remains the standard under Rule 8, and heightened fact pleading is not required to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notice pleading requires that a complaint contain more than bare legal conclusions.

To survive a § 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678; *McCauley v. City of Chicago*, 671 F.3d 611, 615-619 (7th Cir. 2011). "A complaint should not be dismissed for failure to state [a] claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Twombly*, 550 U.S. at 546.

### III. DISCUSSION

A. Motion to Dismiss Plaintiffs Oliver and Tippetts' claims

Defendant moves to dismiss Plaintiffs' complaint in its entirety for failure to sufficiently plead a violation of the TCPA. To state a cause of action under the TCPA, a plaintiff must allege that (1) a call was made; (2) the caller used an ATDS or artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have prior express written consent of the recipient. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1). Plaintiffs have adequately pled that Defendant made multiple calls to both Oliver and Tippetts' cellular telephone numbers without prior express consent; the core of the parties' dispute is whether Plaintiffs have sufficiently alleged facts to support a reasonable inference that they were contacted by Defendant's ATDS or a pre-recorded or automated voice.

In alleging a TCPA claim, a plaintiff is not required to allege facts at the pleading stage that are wholly within the defendant's knowledge, such as the type of machine used for a communication. *Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012). This Court has, however, found that it is "not unreasonable ... to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via the [automatic telephone dialing system]." *Johansen v. Vivant, Inc.,* No. 12 C 7159,

2012 WL 6590551, at *3 (N.D.Ill. Dec. 18, 2012). It is these facts, taken as a whole, that must give rise to a reasonable inference that defendant used an ATDS. *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010)

   1. *Plaintiff Oliver's TCPA claim*

Defendant argues that Plaintiffs have alleged only a bare recitation of an element of the claim—that Defendant used an ATDS to contact Plaintiffs—which is insufficient to state a claim without other supporting details. While "abstract recitations of the elements of a cause of action or conclusory legal statements" are not enough to support a reasonable inference that Defendants used an ATDS, *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (citing *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir.2009)), a plaintiff need only allege enough "by way of factual content to 'nudg[e]' his claim…'across the line from conceivable to plausible.'" *McCauley*, 671 F.3d at 618 (quoting *Iqbal*, 129 S. Ct. at 1952). Plaintiffs, on the other hand, argue that Oliver's indirect factual allegations, based on the circumstances surrounding Defendant's calls, sufficiently support his belief that Defendant was using an ATDS to place calls to Oliver.

Plaintiffs allege that Oliver received four calls from Defendant, that Oliver did not have a business relationship with Defendant since having discontinued his service with DirecTV, and that Oliver believed, based on research, that Defendant's purpose in calling was to solicit and regain Oliver's business. Plaintiffs have alleged that Oliver did not consent to calls from Defendant, but fails to allege that Oliver actually made a request that Defendant cease calling him, after which Defendant continued to call; rather, Plaintiffs allege only that Oliver *intended* to make such a request. Based on these allegations, Plaintiffs conclude that Oliver believed Defendant's calls were made by use of an ATDS. Plaintiffs do not allege that Defendant placed a large number of calls to Oliver or sent Oliver generic advertisements. Defendant argues that

5

these alleged facts are not sufficient to draw a reasonable inference that the calls were automated or prerecorded calls generated from an ATDS. While Plaintiffs' allegations are consistent with Defendant having used an ATDS, to wit, were *possibly* made with an ATDS, these alleged facts do not suggest beyond the "speculative level" that Defendant actually used an ATDS and is liable under the TCPA. *McCauley*, 671 F.3d at 616; *In re marchFIRST Inc.,* 589 F.3d 901, 905 (7th Cir.2009)(surviving dismissal requires pleading "some facts that suggest a right to relief that is beyond the 'speculative level.'"); *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011)("The fact that the allegations undergirding a plaintiff's claim could be true is no longer enough to save it."). Absent a plausible inference that Defendant used an ATDS, a necessary element of a TCPA claim, Plaintiff Oliver's claim must be dismissed.

      Defendant further maintains that, by pleading facts that show he has no legal claim (i.e. that he never answered the phone), Oliver has pled himself out of court such that his claim should be dismissed with prejudice. *Atkins*, 631 F.3d at 832 (citing *Hecker v. Deere & Co.,* 556 F.3d 575, 588 (7th Cir.2009)). While Plaintiff Oliver may have difficulty curing the stated deficiencies, courts should and do grant leave to amend freely "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *See* Fed. R. Civ. P. 15(a)(2); s*ee also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *McGinity v. Tracfone Wireless, Inc.*, No. 6:13-CV-1214-ORL-22K, 2014 WL 1202950 (M.D. Fla. Mar. 11, 2014); *Brailey v. F.H. Cann & Associates, Inc.*, No. CIV. 6:14-0754, 2014 WL 7639909, at *9 (W.D. La. Dec. 5, 2014); *Gragg v. Orange Cab Co.*, No. C12-0576RSL, 2013 WL 195466, at *2 (W.D. Wash. Jan. 17, 2013). "If it is *clear* that any amendment would be

futile," leave to amend should be denied. *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 986 (N.D. Ill. 2013), *on reconsideration* (June 7, 2013) (citing *Bogie v. Rosenberg,* 705 F.3d 603, 608 (7th Cir.2013) (emphasis supplied)). Here, it is not clear that amendment would be futile and leave to amend Plaintiffs' complaint with respect to Plaintiff Oliver's claim is granted.

### 2. *Plaintiff Tippetts' TCPA claim*

Defendant also argues that, though Tippetts did answer some of the calls he claims to have received, he has alleged facts, including that he spoke with a live representative, which negates the use of an ATDS. Plaintiffs alleged that Tippetts received twenty-five calls from Defendant between April to September 2014, that he did not consent to being contacted by Defendant, and that he requested on three occasions that Defendant cease contacting him, after which Defendant continued to contact him. Plaintiffs also alleged that Tippetts answered Defendant's call on at least three occasions and each time heard a momentary pause before a live representative of Defendant began speaking. Defendant maintained a record of notes taken from previous calls and Tippetts was always routed to a different "account manager" who asked a series of questions about Tippetts' cancellation of DirecTV services and who attempted to regain Tippetts' business.

Defendant claims that Tippetts' allegations fail because Tippetts alleges that he spoke with a live representative, not an automated or prerecorded voice. *Duran v, Wells Fargo Bank, N.A.*, 878 F.Supp. 2d 1312, 1316 (S.D.Fla. 2012) (no factual allegations to support claim that calls regarding a specific debt were made by an ATDS where plaintiff spoke with defendant's representative); *McGinity*, 5 F. Supp. 3d at 1340 (use of an ATDS implausible, despite large number of calls, where plaintiff spoke with the same individual representative on multiple occasions). Unlike *Duran* and *McGinity*, Tippetts was not in communication with one

representative from Defendant, had made it clear that he did not want to be contacted by Defendant (which had been noted in Defendant's records), and did not have a specific issue requiring Defendant to be in contact with him. Defendant suggests that Tippetts' claim might have been saved had he alleged that he waited a long period of time, rather than a "momentary pause," before speaking to a live representative. Then, Defendant argues, Tippetts' allegations might have indicated a call being transferred or routed by an ATDS to a live representative. The precise length of the pause and how long it takes to transfer or route a call is inappropriate at the pleading stage. Tippetts' allegation regarding the "momentary pause," along with his other allegations regarding Defendant's phone calls, are sufficient to draw a reasonable inference that Defendant used an ATDS in making its calls to Tippetts. Defendant's motion to dismiss Plaintiff Tippetts' claim is denied.

B. Defendants' motion to strike paragraphs 70-72

Defendant moves, in the alternative, to strike paragraphs 70-72 of Plaintiffs' Complaint because they allegedly contain immaterial facts and hearsay statements. A court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Paragraphs 70-72 contain comments from online forums purporting to describe various individuals' experiences with Defendant's telemarketing campaign. These allegations are not voluminous or irrelevant to the complaint, offered for the truth, or describing prior litigation against Defendant. *Porter v. Fairbanks Capital Corp.*, No. 01 C 9106, 2003 WL 21210115, at *7 (N.D. Ill. May 21, 2003) (striking exhibit containing fifty pages of various complaints internet users posted regarding the practices of numerous mortgage servicers); *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774 (S.D. Tex. 1999) (rejecting information from the internet because there is no way of verifying the authenticity of the alleged

8

contentions); *New Jersey Prot. & Advocacy, Inc. v. Velez*, No. CIV.A.08-1858(AET), 2008 WL 4192068, at *2 (D.N.J. Sept. 9, 2008) (striking references in the Complaint to separate lawsuits that have been previously initiated by plaintiff against defendant as impertinent, immaterial and prejudicial). Rather, these allegations serve a legitimate purpose—to show the basis for Tippetts' belief that Defendant contacted him through an ATDS. Defendant's motion to strike is denied.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted without prejudice with respect to Plaintiff Oliver and denied with respect to Plaintiff Tippetts. Plaintiff Oliver is given until May 11, 2015 to file an amended complaint. Defendant's motion to strike is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: April 13, 2015